The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff and good morning, counsel. This is our case number 2024, excuse me, 423-1307. Wheat v. Murphy with Ms. Ginski as the appellant. And I'll ask the counsel to identify themselves. Counsel for appellant, please state your name for the record. Jim Ginski. Thank you. Counsel for the appellate. We have two different counsel for appellees. We're going to split time. Is that correct? That's correct, Your Honor. Go ahead. Your Honor, my name is Brett Cole. I'm counsel for defendant appellee Patrick Murphy. You'll be speaking first, Mr. Cole? Yes, I will. Okay. Other counsel? Sure. Good morning, Your Honor. Rachel Brandt for intervener appellee advocate. Okay. Thank you, Ms. Brandt. Mr. Ginski, on behalf of the appellant, you may proceed, sir. Thank you, ma'am. Please, the court, firstly, let me apologize for the delay. This never happened before. And I did test my microphone and camera, and on my end, they were working, so I can't explain the delay. Having said that, let me indicate that there was no intentional misconduct in this matter. Defendants continue to argue that plaintiff's attorney was trying to get away with something. Had that been the case, plaintiff would never have disclosed that the privileged documents were sent to plaintiff's expert, Dr. Timothy Sanborn. Contrary to what the defendants argue in this case, the award of attorney fees here is nothing if not punitive. At the emergency hearing, at which neither defendant asked for attorney fees, and in subsequent pleadings, plaintiff agreed on the record to every request that advocate made. Plaintiff agreed to the temporary restraining order, plaintiff agreed to the injunctive relief, and also agreed to, quote, permanently destroy any privileged materials in our possession, thus avoiding any further inadvertent dissemination of those materials. Mr. Ginski, good morning. Good morning. With respect to whether or not the sanctions were punitive, here, the trial court specifically analyzed and considered the factors that the Supreme Court outlined in Szymanowski, correct? And even mentioned the Szymanowski case when it made its ruling. So, given the fact that 219C allows for reasonable fees, including attorney's fees, as part of a 219C sanction, and the court referred to Szymanowski and outlined those factors, how is it that we should look at these sanctions as punitive? I think you have to get into the procedural due process problems that arise in this case, Your Honor. I don't think there's any question but that with respect to the award of attorney fees, whether it be pursuant to 219 or Rule 237, there has to be some type of procedural due process. As Justice McMorrow stated in her dissent and an earlier case, you have to be able to withstand, if you're the party seeking attorney fees, you have to have the ability to withstand some type of examination of those attorney fees. In this case, all that plaintiff was given were redacted copies of those bills. Plaintiff had absolutely no ability to try to determine whether or not everything that was reflected or not reflected, as the case may be since they were heavily redacted, bore on the issue with respect to the privileged materials. You never asked for a hearing at the trial court level to look at this issue of the redaction of the invoices that were submitted. That's not plaintiff's burden. How can you now, for the first time, raise this issue on appeal? That's not plaintiff's burden, Your Honor. Plaintiff doesn't have the obligation to prove on behalf of the defendants that their bills were reasonable. That makes no sense. The parties who are asking for compensation in the form of attorney fees have the obligation to present that information and to be able to withstand some type of examination, whether it be cross-examination or in some other manner, a deposition, for instance. That's not plaintiff's burden. That's the burden of the party asking for attorney fees. Well, the trial court looked at these unredacted invoices in chambers. Isn't that correct? I would assume that she did, but that's not the issue. The issue is whether or not procedurally attorney fees can be awarded in this context, when nothing other than redacted attorney fees are given to the party being stuck with the attorney fees. Did you object the trial on the basis that the petitioners failed to present sufficient evidence to prove this claim? I object, yes. Plaintiff objected to the attorney fees from day one. That's not my question. Did you object on the basis that they failed to present sufficient evidence to support their attorney fees? Such as, requesting an evidentiary hearing? Plaintiff did not request an evidentiary hearing. And I don't know how that would be accomplished when all that was given to the plaintiff for the redacted copies. The trial court conducted a lengthy hearing and favored this court with extensive written findings, Mr. Ginsky, in which one of its key findings was that you had failed to act in good faith. Given the better view of proceedings that the trial court has as opposed to this court, how are we supposed to second guess that finding? That's not what's before this court. The intent or lack of intent on behalf of plaintiff and plaintiff's attorney is an issue that was decided in a different form. The only issue before this court is the propriety of the award of attorney fees. And I would indicate that there was not only no basis for an emergency motion, there was no basis for the motion to intervene on behalf of advocate. As I indicated earlier, plaintiff on the record in open court and in the pleadings that were filed indicated that plaintiff would agree to the TRO, the injunction, and destroying any of those remaining documents. There was no need to have an emergency motion or a motion to intervene. A simple phone call would have resolved that issue. And it's instructive that neither of the defendants asked for attorney fees in that emergency motion. It's obvious from the transcript of the hearing in that emergency motion that the defendants were running to the court in a belief that they had a gotcha moment. Both defendants objected to even continuing the emergency hearing to allow the plaintiff to respond in any fashion to the motions. And as this court knows, waiver is not an admonition to the parties, it's a limitation, excuse me, it's an admonishment to the parties and a limitation to the court. Here the defendants are turning Rule 201K on its head. 201K specifically states that every discovery motion shall incorporate a statement that there was a phone call prior to the filing of any type of motion dealing with the issue of discovery. That wasn't done here. That was the same question. How was your conduct? I think Justice Steigman and I are asking the same thing. Mr. Ginsky, how was your conduct in violating the court order here by disclosing confidential and privileged information under the Medical Studies Act, a discovery dispute? That's how it was postured by the defendants. They brought a Rule 219 motion for sanctions for violating discovery. Judge, in all due respect, I don't think that's even an issue on this case. This court has previously ruled that a party cannot run to court seeking attorney fees without first trying to resolve the matter in a one-on-one basis, personal contact between the attorneys who are handling the case. That's what this court decided in the case of Donley v. City of Springfield, 2022, Illinois Appellate 4th, 210-378. Here, the dissemination was to and only to basically an agent of the plaintiff, the plaintiff's retained expert witness, Dr. Sanborn. The dissemination was not to anybody else. It was not made to the public. There's a recent case that was just decided in the 2nd District. Three minor plaintiffs versus the Board of Education at Lake Forest High School. It's found at 2024, Illinois Appellate 2nd, 230-173. In that particular case, there was a confidential settlement between the school board, the school district, and the three minor plaintiffs. In contravention of that confidentiality clause, that agreement, all of the salient facts, including the amount of money involved, was disseminated to various employees of the school district as well as to the school board. In addressing that issue, the 2nd District said, the disclosures were made only to employees and agents of the district and not to any third parties. Basically, what the court found was no harm, no foul. That applies directly here. There was no dissemination beyond Dr. Sanborn. There is not one but two different affidavits from Dr. Sanborn indicating he didn't disseminate that information to anybody else. I also think that the issue that you are raising, Your Honor, has been addressed also in the 3rd District in the case that was cited in plaintiff's reply brief. That's the case of Edwards versus Pekin Memorial Hospital. That is at 2023 Illinois Appellate 3rd, 210005. Similarly, in that case, a plaintiff's attorney, in contravention of a confidentiality act, or excuse me, confidentiality clause and agreement, disseminated the specifics of the settlement. But once that dissemination is public, it makes no sense to try to put the horses back in the barn after they've bolted. The reasoning of that case, I think, applies here also. I don't think that absent an agreement, that there's going to be a shifting of attorney fees, that attorney fees in a case like this can be assessed. And I don't know. That's not an argument, excuse me, counsel, that's not an argument you made in the briefs, however, is it? Yes. I don't recall reading that. Yes. You're talking about shifting? I'm sorry, I didn't follow what you last said. Yes, that's the holding of the 3rd District case in Edwards versus Pekin Community Hospital.  Okay. And what the court held there is that in the absence of a statutory authority or an agreement specifically authorizing them, attorney fees and other ordinary expenses of litigation may not be awarded. That was the very holding of that 3rd District case. That applies here and I think is absolutely controlling. I'm not aware of how much time I've got left. You have time. You may proceed. I think that, frankly, one of the more important questions that needs to be addressed here and one that can provide quite a bit of guidance, not only for practitioners but for the trial bench, is to lay down some ground rules for when attorney fees as a sanction are being considered. What are the procedural due process elements that need to be complied with? If one were to read the award of attorney fees, whether it's under Rule 237 or Rule 219 as here, the cases are extremely inconsistent. It's not very helpful to the practicing bar. It's not guidance to the trial bench to have all of these opinions that really can't be reconciled. I think this court should take the opportunity to say there are certain procedural safeguards, procedural due process elements that need to be complied with. If they're complied with, fine. If attorney fees are justified, that's fine. They're not justified here. They were clearly punitive. Dr. Murphy, in particular, got the benefit of his motion. His motion was not for attorney fees. It was to bar Dr. Sanborn. He won that motion. Dr. Sanborn was barred. Plaintiff had to retain a second opinion witness. Adding attorney fees on top of granting the only relief that the defendant, Dr. Murphy, asked for is unjustified and is nothing but punitive. It's also punitive with respect to the hospital because the hospital had been dismissed previously with prejudice. The order that the hospital's attorney, Ms. Brandt, drafted in this case specifically said that's the end of the matter and there can't be any further litigation involving this issue between the plaintiff and the hospital. That's the language that Ms. Brandt drafted. The hospital was out of the lawsuit, dismissed with prejudice, having drafted an order that barred further litigation between the parties, and I think this is the most important issue. The hospital had been sold prior to the award of attorney fees and prior to the motion to intervene. The basis of the hospital's motion to intervene was that it had to protect its medical studies, provisions, and policies and procedures so that they wouldn't be violated in the future. The hospital no longer owned Roman Medical Center. Advocate had withdrawn from the Bloomington Normal Market. There was no fear of ongoing dissemination, and that was the basis of the award of attorney fees for the hospital. I'm happy to answer any other questions that the court may have. The orders entered here, counsel, regarding dissemination of the documents really might have bound Advocate in the future. We don't know the terms of the sale and what the new hospital took on in terms of responsibilities, liabilities, obligations, so I don't think we can speculate about that, but certainly there was an interest that Advocate had in preventing this information from being disseminated in the future, even if they were out of the lawsuit. That raises two questions, though, Your Honor, with all due respect. What was going to be the ongoing dissemination? It had been sent to one person and one person only. That person hadn't sent it to anybody else. How is there going to be ongoing dissemination? I also want to address your issue about we're speculating. I think that speculation precludes you from drawing any conclusions on that issue, but I can also say that I'm relatively familiar with how that transaction was structured, and it was structured as an asset sale, meaning Carl Clinic, when they bought the hospital, didn't buy any of the ongoing obligations, debts, or liabilities. You raised this issue at the trial level? It was at the trial level only to the extent that Plaintiff had repeatedly indicated that Advocate no longer owned the hospital at the time of their petition to intervene. Why didn't you present any evidence or claim at that time that you're now presenting to us that therefore Carl, the new owner, had no interest and let the trial court address it? Maybe I'm not understanding your question, Justice Steigman. Plaintiff did indicate both in pleadings and at argument at the hearing that Advocate had sold the hospital, that at the time of the petition to intervene, Carl was the owner of the hospital. Well, to be more clear, you're arguing that the inference exists, therefore, that Advocate at this point and Carl's new owner had no interest in preserving the confidentiality agreement. I am arguing that. Well, why didn't you present some specific evidence on it, such as the arrangement specifically between Carl and Advocate and let the trial court address whether or not Carl had any continuing interest in preserving the confidentiality agreement? Because with all due respect, that's not relevant, Your Honor. There was no danger that there was going to be ongoing dissemination. That was not a consideration that the court should have even made. You'll have an opportunity to address this again in rebuttal. Thank you. So proceeding first to Mr. Cole, you have 10 minutes to address this, sir. Thank you, Your Honor. May it please the court. As I introduced myself earlier, I'm Brett Cole, and I represent Dr. Patrick Murphy, defendant below on appellee here. I'm here today to ask the court to affirm the trial court's judgment that the grant of attorney fees was an appropriate sanction for Mr. Ginsky's misconduct in this case. That's what the case is about. My client requests this court affirm the trial court's grant of attorney's fees as a sanction for Mr. Ginsky's misconduct for two reasons. First, the reimbursement of attorney's fees is appropriate as a discovery sanction permitted expressly under Illinois Supreme Court Rule 219 by my motion, by Ms. Brandt's motion, or by the judge's motion. And second, although Rule 219 does allow for additional monetary sanctions and the court's discretion, the sanctions here were purely compensatory and not at all punitive. And there's been no dispute that the judge's conduct in this case and decision-making in this case is reviewed for an abuse of discretion, which suggests that sanctions should not be overturned unless there is a clear position taken that no reasonable person would adopt. Counsel, good morning. I have a question for you. Sorry to interrupt. So if you brought this request for sanctions under 219C, how would you respond to Mr. Ginsky's argument that certainly 201K, since this was a discovery matter, should have been complied with? Well, I'd address that first two ways. The first way is that there was no suggestion in the pleadings concerning this sanction when the motion for sanctions was filed. There was no suggestion in those pleadings that there was no compliance with 201K. So I would argue that's forfeited. If we move past the forfeiture issue to the substance of it, there was substantial compliance with 201K leading up to the order that the court entered ruling these documents privileged under the Illinois Medical Studies Act. And following compliance with 201K and the court's order, Mr. Ginsky flouted the court's order. There's no amount of telephone calls that would allow me to get Mr. Ginsky to go back in time and not disclose this privileged information to his retained expert witness. There was nothing that a telephone call would have accomplished with regard to this conduct that would be contemplated under Rule 201K. Rule 201K, I believe, contemplates a discussion among attorneys about substantial discovery disputes as to privilege before we take the issue to the court. And that occurred. There was a discussion about whether these documents were privileged. And in response to that discussion and the failure of the parties to agree, Judge Foley entered an order that I believe was something like 19 pages long, itemizing all of these documents that were provided by the hospital and saying what was privileged and what was not. There was extensive review by the court of this material after extensive discussion amongst the attorneys as to what was privileged and what was not. And following that order, Mr. Ginsky sent that material to his expert witness in violation of the order. I do not believe that Rule 219 requires or Rule 201K requires that after a party violates a clear order from the court that there be a telephone call to counsel. That's not what 201K requires. Counsel, I want to make sure my understanding is correct with your telling the court. Is your position that at the trial court, with all the discussions concerning all this, that Mr. Ginsky never claimed that you filed the dictates of Rule 201K? Mr. Ginsky never claimed that there was noncompliance with 201K at the time of the arguments on the motions for sanctions. He's raised that issue here. I want to make sure your position is that it wasn't raised at the trial level. That is my position, yes. Okay, go ahead. And in addition to waiving the issue with regard to compliance with Rule 201K, I believe there was also a forfeiture of arguments pertaining to procedural due process that Mr. Ginsky has raised here. The trial court, in ordering sanctions and barring the witness, Dr. Sanborn, ordered that the parties, the defendants, should submit to the trial court itemized attorney's fees and also provide those in redacted form to Mr. Ginsky and then subsequently ruled on amounts for attorney's fees. Mr. Ginsky had the amounts on those itemized invoices. He did not have unredacted copies. He did not ask for unredacted copies. He did not contest the amounts of the fees. He contested the fees entirely, but he didn't contest the amount of the fee. He didn't say this is an unreasonable amount for the work I would expect to be associated with the remedy to my misconduct. He said, I don't think a fee should be awarded. That's something different. And now he comes to the appellate court and says, oh, I should have been afforded the opportunity to examine the reasonableness of these fees. Well, he didn't ask for it, and I believe that's a waiver. Counsel, is Mr. Ginsky correct that attorney's fees were asked for in the emergency motion? And I think I heard you say that the attorney fees became an issue on the court's own motion. That's accurate. Well, I speak for Dr. Murphy when I say that's accurate. Dr. Murphy's motion did not include a request for attorney's fees. The court, having heard all of the arguments on the motions for sanctions, opted to award attorney's fees as a compensatory amount. There was substantial expense associated with preparing and investigating the motions for sanctions, and the court instructed the parties to provide itemized accounts of those fees. And then the court struck from those itemized accounts, certain fees that it determined were duplicative or not necessarily related to the sanctions motion, and we accepted that. Mr. Ginsky had an opportunity to contest those amounts and didn't opt to contest those amounts. I also want to get into the burden of proof because there's been some discussion in briefing about the burden of proof of the factors that lead to a fee, and the defendants have met every one of these factors for burden of proof, the Shimanoski factors. The court noted the Shimanoski factors in the order for sanctions. Defendants were surprised that Mr. Ginsky had after the court ordered no disclosure of Medical Studies Act information. Defendants were surprised that he had disclosed that information to his expert. The reliance of Dr. Sanborn on this privileged information was a prejudice to the defendants substantially in the case and also in terms of the remedies that had to be undergone to solve the problem of the wrongful disclosure. The nature of the evidence disclosed went right to the heart of standard of care and causation, which were the issues in the case. And Dr. Murphy and an advocate were diligent in their efforts to prevent further disclosure of this after the disclosure was discovered. And on the timeline of things, Mr. Ginsky disclosed this information to his expert witness in November. He made a disclosure in January that the expert witness had reviewed the Medical Studies Act material, but he didn't say when the review occurred. So it was on the radar of defendants that, oh, we have to ascertain what the degree of reliance is. I see my time is up. It is. Thank you, counsel. That will conclude your remarks. And at this point, we'll then move to Ms. Brandt. You may conduct your presentation at this time. Good morning, and may it please the court, Rachel Brandt for advocate, the intervener appellee. I would just briefly like to first address some of the issues that have come up in oral argument today. First, just to clarify some issues, Mr. Ginsky argued that no attorney's fees were requested in the appellee's emergency motion for temporary restraining order. That's accurate, and that makes sense, because it was a motion for a temporary restraining order. Attorney's fees would not be appropriate at that time. Advocate also sought intervention and for leave to file a motion for sanctions. In advocate's motion for sanctions, attorney's fees were requested. So that's just kind of the procedural history of how that happened. Mr. Ginsky also argues that he was entitled to a rule 201K conference prior to the filing of the emergency motion for TRO. I would just point out that for emergency motions for TROs, no notice to the party is required. So it seems illogical to me to require a 201K conference prior to a hearing on an emergency motion for TRO. Also, something that came up today in oral argument and in the appellant's reply is the body of case law, and I'm sorry if I'm misspeaking, having to do with the Lake Forest School District and related case law, those cases deal with settlement confidentiality. And I believe Mr. Ginsky stated that that court said that in the absence of statutory authority, there would be no reason to award attorney's fees for the breach of a confidentiality agreement. First of all, there's no confidentiality agreement in place here that's at issue in this case. At issue is the Medical Studies Act and Supreme Court Rule 219. So those are the statutory authority that wasn't present in that body of case law that is present here. And, therefore, I would argue that that body of case law is not really relevant here. Next, I just want to briefly touch on the issue of the sale of Advocate Broman to another entity. First of all, I don't see how that sale would affect whether or not the appellant's misconduct was sanctionable in this issue. The trial court found that if they had not moved to intervene, then there wouldn't have been sanctions that could have imposed on them. Could have been imposed, correct? If Advocate had not moved to intervene and that had been granted, then there couldn't have been sanctions, correct? I agree. I believe that intervention was the correct mechanism for Advocate to ultimately request sanctions. And I can speak on the appropriateness of the order for intervention or granting the petition to intervene. When you do that, if you can also address when you do that, why Dr. Murphy couldn't have represented Advocate's interest with regard to the disclosure issue, since he was still in the case and Advocate was out of the case. Sure, I'd be happy to. I'd first just mention, again, this is an abuse of discretion standard. Also, the Argonaut case that was cited in our brief tells us that the intervention statute is to be liberally construed as it is remedial in nature. So, Justice Zinoff, the question that you just posed, I believe, has to do with subsection A2 of the intervention statute, which provides for intervention when the representation of the applicant's interest by the existing parties, in this case Dr. Murphy, may be inadequate and the applicant may be bound by an order in the action. Of course, I believe Dr. Murphy's counsel is a very capable counsel, but the interests that Dr. Murphy had were separate and distinct, well, maybe not separate, but distinct and different from Advocate's interest in this case. Advocate had a duty under the Illinois Hospital Licensing Act to protect this peer review information from wrongful dissemination or inappropriate dissemination, I believe is the wording of the statute. I don't believe that transferring that duty, that statutory duty, to a physician's counsel in a pending matter would be appropriate. Advocate's interests are to the peer review, are to its physicians, and to patient safety. Dr. Murphy's counsel's objectives are in the best interest of Dr. Murphy, and I believe now they sometimes have some overlap of those interests, but Advocate's interest in protecting its peer review material is based in the Medical Studies Act and the legislature's intention to keep that information confidential in order to promote patient safety. So I believe intervention under subsection A2 would be appropriate. Also, intervention under A3, subsection A3, is appropriate. That provides for intervention when a party's property or an applicant's property is at issue. I'm sorry, the Illinois Hospital Licensing Act defines these medical records and documents generated regarding patient care, which would include peer review materials, as the hospital's personal property, different from real property in this case. There's no question that Advocate Broman was sold to Carl, but the documents at issue still remain the property of Advocate. They're still in possession of that property to this day. I'd just like to briefly touch on some arguments made in the appellant's brief regarding this issue. He relied on the Maggie case, I'm not sure if I'm pronouncing that right, for the preposition that because Advocate was dismissed after settlement, the court liked jurisdiction. I would argue that that case is not on point. In the Maggie case, judgment had already been entered after a jury verdict. The defendant who judgment was entered against then filed some post-trial motions. At that hearing, the plaintiff orally requested leave to file motion for sanctions. The plaintiff never actually filed that motion for sanctions. In Maggie, there was no dismissal with prejudice, there was no motion to intervene, and the party seeking sanctions in Maggie was already a party to the case. The issue was the entry of judgment, not in this case. The facts are just a little too different to be instructive here. Then I would, again, briefly address arguments made today that the appellant objected to the reasonableness of attorney's fees in the trial court. In his reply, he cites to his response to Advocate's motions for the preposition that he did not waive this objection to the reasonableness of the fees. However, that cite to the response, he merely states that he objects to Advocate's request for attorney's fees and costs and says nothing further on that issue. That general objection was filed September 4, 2020. Advocate filed their motion to establish fees and costs with those invoices attached about a month later on October 7, 2020. So that general objection prior to even seeing these invoices that he's taking issue with cannot be a basis to claim that that issue was preserved. I believe I'm out of time unless any of you have any further questions for me. I see none, counsel. Thank you. Mr. Ginsky, any rebuttal, sir? Yes. Go ahead. Justice Zinoff, I do want to call to your attention the fact that Advocate specifically asked Judge Foley to hold me in contempt and she refused to do that. There had to be a basis for that. I think that reflects on the fact that she didn't think I was being contemptuous and that maybe she did feel that this was inadvertent, although wrong. But Plaintiff has admitted that from the get-go. Mr. Cole indicates that Mr. Ginsky did not ask for unredacted copies of the bills. There's an order by Judge Foley saying that Plaintiff would only get redacted copies. There would be no reason to ask for unredacted copies in the face of that order. Mr. Cole also indicates that 201K, the requirement to have personal consultation before filing such a motion, was complied with here. It was not. It was absolutely not. He's conflating all of the arguments and phone conversations back and forth concerning the Medical Studies Act. Counsel, excuse me. That was my question to Mr. Cole. I think I asked him whether or not you specifically raised whether you complied with 201K before the trial court and he said you did not. Was he incorrect? Yes. Only to the extent that if you read beginning at page 7 of Plaintiff's reply brief, what actually transpired at that emergency hearing. It was obvious that there had been no compliance with 201K because the judge said, is everybody ready to proceed? I responded on the record and this is part of the record on appeal. Counsel, no, Your Honor. This has been styled as an emergency motion. I don't understand the emergency. Dr. Sanborn's deposition has not been set. The case is tentatively set for trial in November. This was all in 2020, in calendar year 2020. In McLean County, Illinois, only one civil case went to trial in 2020. This case was not going to go to trial anytime soon. Judge, I need to make the point that I was trying to make earlier, if I may. Mr. Cole says 201K was complied with. It was not complied with. He kept referring to all of the discussions back and forth over the confines of the Medical Studies Act and what was protected or privileged and what wasn't. That's a different issue than his motion to bar Dr. Sanborn. And I would also indicate that Ms. Brant is completely wrong when she says 201K doesn't apply to a TRO. The TRO was an add-on. The first filing on these issues was by Mr. Cole on a Thursday before the emergency hearing the following Monday in the morning. Mr. Cole's motion was to bar Dr. Sanborn. That was filed first and that was what was noticed up. It was only later that Ms. Brant filed the TRO. So 201K was not weighed and it was applicable and it was not complied with. There's an argument that was just made that plaintiff contested the award of attorney fees in general, but did not contest the reasonableness of those fees. Plaintiff had no ability to do that with redacted copies. You can't do it when you don't know what the evidence is. Ms. Brant also indicates that the motion to intervene was completely justified by the Illinois Hospital Licensing Act. That's being raised for the first time today at this hearing. That hasn't been argued in the past and it wasn't part of her brief. Mr.  you started out by mentioning that in the face of the Cal courts order with respect to redacted invoices, it wouldn't make sense to object, but an objection would have preserved that issue for appeal purposes. Would it have not? No more so than the objections that plan a file. Plaintiff was not mute on that point. Plaintiff objected to the award of attorney fees from day one. So you're saying. I'm sorry to interrupt. General objection covered the specifics you were referring to. Is that right? Absolutely. And immediately after the award of attorney fees, plaintiff filed a motion, excuse me, a notice of appeal. The court would not take the appeal because it was obviously interlocutory at that point. And I understand. So your time is up and we will conclude the arguments at this point. The court will take this matter under advisement and stand in recess.